# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
| BANCO NACIONAL DE COMERCIO EXTERIOR S.N.C., INSTITUCION DE BANCA DE DESAROLLO | : | Adversary Case No. 18-50302 (BLS) |
|  | : |  |
| Plaintiff, | : | **Filed Under Seal Pursuant to Main Case ECF No. 350 and 350-1; and Del. R. 9018-1(e)** |
| v. | : |  |
| MOSSI & GHISOLFI INTERNATIONAL, S.À R.L., M & G USA CORPORATION, M&G WATERS USA, LLC, M & G FINANCE CORPORATION; CHEMTEX INTERNATIONAL, INC., M & G USA HOLDING, LLC AND M & G RESINS, USA, LLC, | : |  |
|  | : |  |
| Defendants. | : |  |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND JOINDER TO THE STRONG ARM ARGUMENTS RAISED IN THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REPLY IN SUPPORT OF THE MOTION TO DISMISS

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

Dated: June 12, 2018

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:     ljones@pszjlaw.com
           joneill@pszjlaw.com
           jmulvihill@pszjlaw.com

JONES DAY
Scott J. Greenberg
James Sottile IV
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306
Email:        sgreenberg@jonesday.com
              jsottile@jonesday.com
              scorririvine@jonesday.com

JONES DAY
Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:    (216) 586-7035
Facsimile:    (216) 579-0212
Email:        ceblack@jonesday.com

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 3

A. This Court Has Jurisdiction over the Constructive Trust Claim, Which Bancomext Has Failed to Plead as a Matter of Law ............................. 3

    1. This Court Has Jurisdiction to Consider the Constructive Trust Claim ................................................................................................ 3

    2. Bancomext's Constructive Trust Claim Fails as a Matter of Law ............. 7

        (i) Bancomext Has Failed to Allege Facts Sufficient to Support any Inference that It Can Trace into any Res .................. 7

        (ii) Having Failed to Allege a Fraud Claim with the Requisite Level of Specificity, Bancomext Cannot Satisfy the Unjust Enrichment and Fraud Elements of a Constructive Trust Claim as a Matter of Law ............................................................ 11

B. Bancomext Fails to Allege Fraud and Fraudulent Misrepresentation with the Requisite Level of Specificity ....................................................... 12

C. Bancomext Has Failed to Allege Facts Sufficient to Maintain an Aiding and Abetting Fraud Claim ............................................................................. 17

D. Bancomext's Civil Conspiracy Claim Must Be Dismissed ................................. 17

E. The Conversion Claim Fails as a Matter of Law ................................................. 18

CONCLUSION ............................................................................................................ 20

**CASES**

*ASARCO LLC v. Ams. Mining Corp.,*
    396 B.R. 278 (S.D. Tex. 2008) ...................................................................................17

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.,*
    974 F.2d 1358 (3d Cir. 1992).................................................................................2, 16

*Chesapeake Tr. v. Chesapeake Bay Enter., Inc. (In re Potomac Supply Corp.),*
    2016 Bankr. LEXIS 509 (Bankr. E.D. Va. Feb. 18, 2016) ........................................6

*EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.),*
    243 B.R. 231 (Bankr. D. Del. 2000) ..........................................................................8

*Fabry's S.r.L. v. IFT Int'l, Inc.,*
    2003 U.S. Dist. LEXIS 8597 (S.D.N.Y. May 21, 2003) ....................................18, 19

*Flournoy v. Wilz,*
    201 S.W.3d 833 (Tex. Ct. App. 2006) ........................................................................8

*Fobian v. Storage Tech. Corp.,*
    164 F.3d 887 (4th Cir. 1999) .....................................................................................6

*Greenfield v. Tele-Communications, Inc.,*
    1989 Del. Ch. LEXIS 49 (Del. Ch. 1989).................................................................18

*Hoffman ex rel. N.L.R.B. v. Beer Drivers & Salesmen's Local Union No. 888,*
    536 F.2d 1268 (9th Cir. 1976) ...................................................................................4

*In re Allustiarte,*
    1990 U.S. App. LEXIS 21058 (9th Cir. Dec. 4, 1990)................................................6

*In re Appalachian Oil Co., Inc.,*
    471 B.R. 199 (Bankr. E.D. Tenn. 2012) .....................................................................8

*In re Burlington Coat Factory Sec. Lit.,*
    114 F.3d 1410 (3d Cir. 1997)....................................................................................14

*In re Columbia Gas Sys., Inc.,*
    997 F.2d 1039 (3d Cir. 1993)......................................................................................8

NAI-1503783158v7

*In re Dardashti,*
　　2008 WL 8444787 (9th Cir. BAP Feb. 12, 2008)..............................................................4

*In re First Central Financial Corp.,*
　　377 F.3d 209 (2d Cir. 2004).......................................................................................11

*In re G-I Holdings, Inc.,*
　　568 B.R. 731 (Bankr. D.N.J. 2017) ......................................................................3, 4, 5

*In re KI Liquidation, Inc.,*
　　2008 WL 5109369 (D.N.J. Dec. 1, 2008)...............................................................8, 10

*In re Life Partners Holdings, Inc.,*
　　2017 WL 5591632 (Bankr. N.D. Tex. Nov. 17, 2017) ...............................................8

*In re Mazzocone,*
　　1995 WL 113110 (Bankr. E.D. Pa. Mar. 16, 1995)...............................................4, 5

*In re Norris Grain Co.,*
　　167 B.R. 258 (M.D. Fla. 1994) ....................................................................................7

*In re One2One Communications, LLC,*
　　805 F.3d 428 (3d Cir. 2015)........................................................................................7

*In re Rockefeller Center Properties, Inc. Sec. Lit.,*
　　311 F.3d 198 (3d Cir. 2002)......................................................................................15

*In re Scopac,*
　　624 F.3d 274 (5th Cir. 2010) ......................................................................................4

*In re VII Holdings Co.,*
　　362 B.R. 663 (Bankr. D. Del. 2007) ...........................................................................4

*In re Washington Mut., Inc.,*
　　461 B.R. 200 (Bankr. D. Del. 2011) .......................................................................4, 6

*In re Whispering Pines Estates, Inc.,*
　　369 B.R. 752 (1st Cir. BAP 2007) ..............................................................................6

*Kuroda v. SPJS Holdings, L.L.C.,*
　　971 A.2d 872 (Del. Ch. 2009)...................................................................................19

*Leonard Petroleum, Ltd. v. Mene Grande Oil Co.,*
　　415 F. Supp. 158 (D. Del. 1976)...............................................................................18

NAI-1503783158v7

*Md. Cas. Co. v. Schroeder,*
    446 S.W.2d 117 (Tex. Civ. App. 1969) ...............................................................8

*Meadows v. Bierschwale,*
    516 S.W.2d 125 (Tex. 1974) .............................................................................11

*MicroStrategy, Inc. v. Business Objects, S.A.,*
    369 F. Supp. 2d 725 (E.D. Va. 2005) .................................................................5

*Official Committee of Unsecured Creditors v. Catholic Diocese of Wilmington*
    *(In re Catholic Diocese of Wilmington, Inc.),*
    432 B.R. 135 (Bankr. D. Del. 2010) ...................................................................8

*Pearson v. Component Technology Corp.,*
    247 F.3d 471 (3d Cir. 2001)...............................................................................16

*Permian Petroleum Co. v. Petroleos Mexicanos,*
    934 F.2d 635 (5th Cir. 1991) .............................................................................19

*Redrock Admin. Servs. LLC v. Magna Entm't Corp. (In re Magna Entm't Corp.),*
    438 B.R. 380 (Bankr. D. Del. 2010) ...................................................................8

*Sonneberg v. United States,*
    2003 U.S. App. Lexis 6503 (3d Cir. Apr. 4, 2003)............................................14

*U.S. v. Bestfoods,*
    524 U.S. 51, 69 (1998)......................................................................................12

*U.S. Bank N.A. v. Verizon Commc'ns, Inc.,*
    817 F. Supp. 2d 934 (N.D. Tex. 2011) ..............................................................17

*United States v. Colton,*
    231 F.3d 890 (4th Cir. 2000) .............................................................................14

*Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.,*
    2017 U.S. Dist. LEXIS 106969 (S.D.N.Y. July 11, 2017) ................................19

**STATUTES**

11 U.S.C § 363(e) .....................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..........................................................................................passim

NAI-1503783158v7

The Defendants[1] respectfully submit this (i) reply memorandum of law in further support of their motion to dismiss [Adv. P. ECF No. 7] (the "Motion")[2] the amended complaint [Adv. P. ECF No. 6] (the "Amended Complaint") filed by Banco Nacional de Comercio Exterior, S.N.C., Institucion de Banca de Desarrollo ("Plaintiff" or "Bancomext") and in response to Bancomext's opposition to the Motion [Adv. P. ECF No. 21] (the "Opposition") and (ii) joinder to the strong arm arguments raised in the *Official Committee of Unsecured Creditors' Reply in Support of the Motion to Dismiss*, filed contemporaneously herewith.

## INTRODUCTION

Bancomext's Opposition demonstrates yet again that it cannot plausibly allege facts to turn unsecured claims against the Mexican Entities into a constructive trust claim and unsecured claims against the Defendants. Bancomext's only viable claims are the ones it has chosen not to pursue—breach of contract claims against the Mexican Entities.

The core of the Amended Complaint is the constructive trust claim. All other claims are, even if viable (which they are not), unsecured claims. Bancomext's lead argument on its constructive trust claim is that its appeal of the Sale Order (as defined below) divests this Court of jurisdiction to consider whether Bancomext has failed to plausibly allege a constructive trust claim. But the Sale Order decided a different issue—whether Bancomext had met its burden of proving that it was entitled to adequate protection under section 363(e) of the Bankruptcy Code. This Court retains the power to decide whether Bancomext has adequately pleaded a constructive trust claim—it has not.

---

[1]     The Defendants are Mossi & Ghisolfi International, S.à r.l. ("M&G International"), M & G USA Corporation ("M&G USA"), M&G Waters USA, LLC ("M&G Waters"), M & G Finance Corporation ("M&G Finance"), Chemtex International, Inc. ("Chemtex"), M & G USA Holding, LLC ("M&G USA Holding") and M & G Resins USA, LLC ("M&G Resins").

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Bancomext's other constructive trust arguments fare no better. Bancomext says that it has sufficiently alleged tracing by identifying a res—the Corpus Christi Plant—and alleging on information and belief that its loan proceeds were used to fund construction of the Plant. However, naked suspicions do not come close to satisfying the *Twombly* pleading requirements. Bancomext does not and cannot allege facts making it plausible that it could ultimately trace proceeds of its loans to the Corpus Christi Plant and its constructive trust claim fails for this reason alone.

The fraud claims—an essential element of the constructive trust claim—must also be dismissed. As the Defendants demonstrated in the Motion, none of the allegedly false statements were plausibly alleged to have been made by or on behalf of any of the Defendants. Bancomext says that its allegations that the Defendants controlled the Mexican Entities convert any allegedly false statements by the Mexican Entities (which are themselves not plausibly alleged to have been false when made) into false statements by the Defendants. That is wrong. Parent and affiliated entities are only liable for false statements of subsidiaries on veil piercing or alter ego grounds, not simply because they control a subsidiary—which all parent companies do. The key case[3] Bancomext relies on held only that a statement by the officer of a subsidiary is admissible against the parent as a vicarious admission, not that the parent is liable for the subsidiary's fraud. The fraud claims, together with the constructive trust claim premised on the fraud claims, must therefore be dismissed.

Bancomext's arguments on its remaining claims for conspiracy, conversion and fraudulent conveyance are likewise unavailing. Bancomext's conspiracy claim must be dismissed because, without the fraud claims, Bancomext has alleged no underlying tort on which

---

[3]     *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir. 1992).

to base such a claim.  Further, its conversion claim fails either because Bancomext failed to allege that it demanded the return of its collateral, or because its conversion claim is one for breach of contract.  The Amended Complaint should therefore be dismissed in its entirety.

## ARGUMENT

**A.    This Court Has Jurisdiction over the Constructive Trust Claim, Which Bancomext Has Failed to Plead as a Matter of Law**

**1.    This Court Has Jurisdiction to Consider the Constructive Trust Claim**

Bancomext argues that its pending appeal of the Court's order approving the sale of, among other assets, the Corpus Christi Plant (Main Case, ECF Docket No. 1300) (the "Sale Order") deprives the Court of jurisdiction to rule on dismissal of the constructive trust claim.  *See* Opp., ¶ 72.  Bancomext says that the "divestiture rule" strips a trial court of its jurisdiction to decide a dispute presenting the same issue that is on appeal or that would moot an issue raised on appeal.  *See id.* at ¶ 76.  Bancomext's jurisdiction argument fails because the issue raised by the Motion is different from the issue on appeal and deferring consideration of that issue pending appeal would lead to confusion and inefficiency, precisely what the divestiture rule is intended to avoid.  Bancomext's effort to avoid having this Court decide dismissal of the constructive trust claim signals its understandable lack of confidence that it has adequately alleged a constructive trust claim.

An appeal of a bankruptcy court order will "divest the bankruptcy court of jurisdiction if the issues on appeal are identical to the issues presently before the bankruptcy court," or if "the bankruptcy court's determination of the issues before it would interfere with or undermine the appellate process." *In re G-I Holdings, Inc.*, 568 B.R. 731, 764 (Bankr. D.N.J. 2017).  "[D]ue to the inherent nature of bankruptcy cases 'discrete controversies within the overall case framework may often deserve separate appellate consideration,'" and for that reason, courts have "cautioned

against a broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do anything which has any impact on the order on appeal." *Id.* at 763 (quoting *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *op. modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011)). Application of the divesture rule is discretionary, not absolute. *Hoffman ex rel. N.L.R.B. v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) ("[T]he [divestiture] rule is not a creature of statute and is not absolute in character."); *see also G-1 Holdings*, 568 at 763.

Bancomext has not sought or obtained a stay of the Sale Order pending appeal. "[A]bsent a stay pending appeal, the lower court may take all actions necessary to implement or enforce the order from which an appeal has been taken." *In re Washington Mut., Inc.*, 461 B.R. 200, 218 (Bankr. D. Del. 2011) *vacated in part on other grounds* 2012 Bankr. LEXIS 895 (Bankr. D. Del. Feb. 23, 2012) (citing *In re VII Holdings Co.*, 362 B.R. 663, 666 n.3 (Bankr. D. Del. 2007) ("absent a stay pending appeal, [the lower court] may retain jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal . . . [and] may also enforce the order or judgment appealed.")). Framed in this light, the "correct statement of the [d]ivestiture [r]ule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it." *Washington Mut.*, 461 B.R. at 219; *see also In re Dardashti*, 2008 WL 8444787, at *6 (9th Cir. BAP Feb. 12, 2008) (noting that "when there is no stay pending appeal, the bankruptcy court retains jurisdiction to enforce the order that is on appeal, on condition that in doing so, the bankruptcy court does not significantly alter or expand upon the terms of that order."); *In re Mazzocone*, 1995 WL 113110, at *4 (Bankr. E.D. Pa. Mar. 16, 1995) ("most courts have also held that bankruptcy courts retain jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the subject of pending

appeals, as long as that enforcement and implementation does not require redeciding issues that are on appeal") (citations omitted).

Bancomext's divestiture argument fails because the issue on appeal is different from the issue before this Court on the Motion. Nor are the Defendants seeking to relitigate any issues presently on appeal. In the appeal, the District Court will consider whether this Court erred in determining that Bancomext failed to meet its burden of demonstrating that it had a protectable interest in the assets sold as part of the Sale Order such that Bancomext was entitled to adequate protection.[4] Here, the Court will consider whether Bancomext has adequately *pleaded* a constructive trust claim. While that question "touches" on the issues on appeal, the issues are simply not the same. As such, the concerns of "confusion and inefficiency which would of necessity result were two courts to be considering the same issues simultaneously" are not present here. *G-I Holdings*, 568 B.R. at 763.

Nor would deciding the Motion "interfere with or undermine the appellate process." *Id.* at 764. Indeed, the opposite is true. If the District Court were to rule in favor of Bancomext on appeal, the District Court would merely be ruling that Bancomext is entitled to adequate protection, pending a ruling by this Court with respect to whether Bancomext is entitled to a constructive trust over the Corpus Christi Plant.[5] The District Court would not be deciding whether Bancomext had adequately pleaded a constructive trust claim as that issue is not presented on appeal. Delaying a ruling by this Court on that pleading issue pending resolution of

---

[4] *See MicroStrategy, Inc. v. Business Objects, S.A.*, 369 F. Supp. 2d 725, 730 (E.D. Va. 2005) (exercising jurisdiction over issues related to those on appeal upon finding that "[t]he court would not be vacating the underlying judgment that resulted in the need for the injunction in the first instance. The court would be considering the proper limits of the injunction in operating prospectively, not reviewing the merits of any prior decisions that are now on appeal."); *see also Mazzocone*, 1995 WL 113110, at *4.

[5] *See Objection to the Sale of the Debtors' Corpus Christi Assets, Desalination Assets, and Other Assets* (Docket No. 1115), at 19 (requesting "retention of sale proceeds in escrow subject to Bancomext's interests, pending determination thereof.").

the appeal, as Bancomext suggests, would create precisely the confusion and inefficiency the divestiture rule seeks to avoid. It would be patently inefficient for this Court to defer ruling on the Motion while the District Court considered whether to grant adequate protection that would terminate immediately upon the constructive trust claim being dismissed. Any ruling by this Court on the Motion would thus be "in aid of the appeal." *Chesapeake Tr. v. Chesapeake Bay Enter., Inc. (In re Potomac Supply Corp.)*, 2016 Bankr. LEXIS 509, at *13 (Bankr. E.D. Va. Feb. 18, 2016) (quoting *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999)). The Court therefore has jurisdiction to consider dismissal of the constructive trust claim.

Bancomext's argument that this Court should defer consideration of the constructive trust claim because it would moot the appeal is similarly unavailing. Were Bancomext truly concerned that a ruling on the Motion would render its appeal moot, it could have obtained a stay pending appeal. *See Washington Mut.*, 461 B.R. at 220 (declining to apply divestiture rule "simply because it might render moot the [appellants'] appeal . . . [where the appellant] could have avoided this [result] by seeking a stay pending appeal."). Having failed to do so, Bancomext's claim that any ruling on its constructive trust claim would moot its appeal rings particularly hollow.[6] To countenance Bancomext's arguments would be to "severely hamper [the Court's] ability to administer [these] cases in a timely manner." *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 758 (1st Cir. BAP 2007).[7]

---

[6]  Bancomext's mootness argument must fail for another reason. Without a stay pending appeal, there is nothing stopping the Debtors from closing on the sale of the Corpus Christi Plant. The closing of such sale would also render Bancomext's appeal moot. *See Sale Order*, ¶ 27 (directing funding of, among other things, the $50 million "GUC Pool.").

[7]  In the Opposition, Bancomext cites to a number of cases for the proposition that this Court should refuse to exercise jurisdiction over the constructive trust claim. These cases are easily distinguishable because they merely stand for the proposition that a lower court should refuse to exercise jurisdiction over the *same* issues on appeal, *see, e.g.*, *In re Allustiarte*, 1990 U.S. App. LEXIS 21058, at *6 (9th Cir. Dec. 4, 1990) (reversing determination that bankruptcy court had jurisdiction to enter an order upon finding that order on appeal and order before bankruptcy court dealt with the same underlying issue), or in order to avoid "equitable mootness," *Chesapeake*, 2016 Bankr. LEXIS 509, at *14 (applying divestiture rule and declining to exercise jurisdiction over

## 2. Bancomext's Constructive Trust Claim Fails as a Matter of Law

Bancomext further argues that it has adequately pleaded each of the elements of its constructive trust claim. *See* Opp., ¶¶ 101-115. Specifically, Bancomext argues that (a) at the pleading stage, a claimant need not establish tracing (*id.* at ¶ 109); (b) it has adequately pleaded unjust enrichment and the express contract defense does not apply (*id.* at ¶ 105); and (c) it has adequately pleaded an actual fraud or constructive fraud (*id.* at ¶ 101).[8] Bancomext is wrong on all counts.

### (i) Bancomext Has Failed to Allege Facts Sufficient to Support any Inference that It Can Trace into any *Res*

Bancomext argues that identifying a res—the Corpus Christi Plant—and alleging on information and belief that some of its loan proceeds were used to help pay for the Plant is sufficient to plead tracing. *See* Opp., ¶¶ 109-114. That is not the law. Bancomext must plead facts upon which this Court could plausibly conclude that Bancomext could trace the proceeds of the Revolving Credit Agreements into the assets over which it seeks to impose a constructive

---

creditors' request to turnover certain deposits to creditor upon finding that granting relief requested would "equitably moot" pending appeal concerning which party had a legal right to such deposits, but fashioning relief to avoid equitably mooting appeal, including requiring appellant to obtain a stay pending appeal.). Concerns of equitable mootness are not present here because equitable mootness typically applies with respect to consummated plans or transactions on appeal that are "complex" and that would be difficult to "unscramble." *See In re One2One Communications, LLC*, 805 F.3d 428, 434-35 (3d Cir. 2015). Bancomext also cites to *In re Norris Grain Co.*, 167 B.R. 258 (M.D. Fla. 1994) in support of its mootness argument. However, in *Norris Grain*, the IRS sought an order in the bankruptcy court that would have dismissed the chapter 11 case entirely while an appeal was pending on the effect of a discharge injunction on an assessment made by the IRS. *Id.* at 260. The concerns present in *Norris Grain* are not present here because granting the Motion would not result in dismissal of the Debtors' chapter 11 cases or interfere with the appellate process.

[8]  Bancomext also argues that the "Defendants conspired to deny Bancomext information necessary to establish its claim while pursuing an unnecessarily compressed schedule for obtaining approval of the sale of the Corpus Christi assets." Opp., ¶ 78, n. 14. These assertions are without merit. The Defendants facilitated Bancomext's information requests as early as January 2018, providing Bancomext with access to the Debtors' data room, maintained in connection with the sale. Bancomext *never* sought additional discovery *from any of the Defendants*. Further, there was nothing compressed about the Debtors' sale process. The Debtors obtained approval of the bidding procedures for the sale of their assets in December and held an auction for such assets in March. The Debtors were required to hold the auction no sooner than March because their postpetition financing facility expired then and absent such financing, the Debtors would have lacked the funds with which to continue the sale process.

trust. *In re Life Partners Holdings, Inc.*, 2017 WL 5591632, at *11 (Bankr. N.D. Tex. Nov. 17, 2017) (dismissing constructive trust claim where plaintiff failed to plead facts that sufficiently "identified property that can be traced back to the original property allegedly acquired by fraud.").[9]

As set forth in the Motion, the Amended Complaint plausibly alleges only that Bancomext's loan proceeds were commingled in the Cash Pooling Account with funds from numerous other sources used for numerous purposes.[10] Bancomext alleges only on "information and belief" that loan proceeds were used to construct the Corpus Christi Plant, because it cannot affirmatively allege any facts tracing its loan proceeds to the Plant. Bancomext makes no attempt to identify when loan proceeds were supposedly used to fund construction of the Corpus Christi Plant, in what amounts, or what they were used for. Worse, Bancomext fails utterly to

---

[9]     Bancomext cites two Texas cases for the proposition that having identified a commingled pool of cash, the burden is now on the Defendants to identify Bancomext's loan proceeds. These cases, even assuming Texas tracing governs, say nothing about what is required of a plaintiff at the pleading stage in seeking to trace to a res as each case was decided after a jury trial. Bancomext does not come close to plausibly alleging the kind of facts found to support tracing in those cases. *See Flournoy v. Wilz*, 201 S.W.3d 833, 836-37 (Tex. Ct. App. 2006) (finding tracing element satisfied notwithstanding that funds were commingled in defendants' checking account where defendant had written checks from incapacitated son's trust account in the *exact* amount of monthly mortgage payments on a farm over which constructive trust was imposed); *Md. Cas. Co. v. Schroeder*, 446 S.W.2d 117, 121 (Tex. Civ. App. 1969) (finding tracing element satisfied over embezzled funds commingled in defendant's checking account where there was a finding that defendant used embezzled funds to purchase a house, car and insurance premiums).

[10]     Bancomext asserts that at the pleading stage, it merely needs to identify a res to satisfy the federal tracing requirement. *See* Opp., ¶ 113. However, the cases that it cites in support of this proposition advocated for application of either the "nexus test," *see, e.g., Redrock Admin. Servs. LLC v. Magna Entm't Corp. (In re Magna Entm't Corp.)*, 438 B.R. 380 (Bankr. D. Del. 2010), or the "lowest intermediate balance test," *see, e.g., EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231 (Bankr. D. Del. 2000), neither of which is applicable on the facts here. The nexus test only applies where "common-law tracing principles [can]not be applied because the trust res . . . [is] in an abstract dollar '*amount*' rather than specific property . . ." *In re Appalachian Oil Co., Inc.*, 471 B.R. 199, 215 (Bankr. E.D. Tenn. 2012); *see also Official Committee of Unsecured Creditors v. Catholic Diocese of Wilmington (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 158 (Bankr. D. Del. 2010) (refusing to apply "nexus test" where res at issue was not an "abstract amount" but a specifically identifiable res). Here, Bancomext claims an interest in a *res*, the Corpus Christi Plant, making the "nexus test" inapplicable. Similarly, the lowest intermediate balance test is unavailing because it presumes that trust funds are the last funds withdrawn from a particular account. *See In re KI Liquidation, Inc.*, 2008 WL 5109369, at *5, *7 (D.N.J. Dec. 1, 2008) ("Trust beneficiaries lose all rights in the trust funds when the commingled account is entirely dissipated.") (citing *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1063-64 (3d Cir. 1993)). As such, under that test, Bancomext's recovery would be zero, since the Cash Pooling Account was swept and terminated in September 2017.

define the other "Assets" over which it seeks to impose a constructive trust (which, even under Bancomext's "identify a res" argument is plainly insufficient). Bancomext's unsupported information and belief allegations amount to mere speculation that cannot satisfy the *Twombly* plausibility standard.

In the Opposition, Bancomext highlights five allegations that it claims support its "information and belief" conclusion. *See* Opp., ¶ 114. None come close to providing a plausible basis for tracing its loan proceeds into the Corpus Christi Plant.

The first three allegations Bancomext highlights are that (1) its loan proceeds had been sent to the United States, (2) the Mexican Entities have intercompany claims against Defendant M&G USA totaling approximately $550 million and (3) Defendant M&G USA is the parent of M&G Resins, which owns the Corpus Christi Plant. *See* Opp., ¶ 114. At most, these allegations support a plausible conclusion that M&G USA received some of Bancomext's loan proceeds. But tracing to the Corpus Christi Plant would require at least two more steps: (1) that M&G USA transferred Bancomext's loan proceeds to M&G Resins and (2) that M&G Resins used those loan proceeds to fund the construction of the Corpus Christi Plant, rather than for some other purpose. Nothing in the first three allegations would allow the Court to plausibly conclude that Bancomext could establish those additional steps.

Next, Bancomext points to its allegation that draws under the M&G Polimeros Credit Facility in some cases coincide with transfers into the Cash Pooling Account ███████████ ██████████████████████████, each a direct or indirect owner of the Corpus Christi Plant."[11] *See* Opp., ¶ 114. Again, nothing in these allegations provides a plausible basis for the

---

[11]     Bancomext complains that the bank account statements that were attached as exhibits to the Motion are "selective" and should thus be disregarded. See Opp., ¶ 111. Nothing about such statements is selective. Each of the bank account statements ties to specific allegations in the Amended Complaint regarding the alleged transfer of the proceeds of the Revolving Credit Agreements into the Cash Pooling Account ███████

final step required for tracing—that Bancomext's loan proceeds were actually used for constructing the Corpus Christi Plant.[12] In any event, M&G Resins, the actual owner of the Corpus Christi Plant, was a net contributor to the Cash Pooling Account when it was terminated, making any claim that loan proceeds were transferred to it from the Cash Pooling Account and used to construct the Plant implausible.[13]

Finally, Bancomext points to its allegations that the Defendants fraudulently caused M&G Polimeros to obtain the M&G Polimeros Credit Facility in 2015, "for the specific purpose of funding budget shortfalls in the construction of the Corpus Christi Plant."[14] *See* Opp., ¶ 114. This allegation is naked speculation without any facts pleaded to support it, other than that the Defendants needed funding for the Corpus Christi Plant in the summer of 2015. The fact that the Defendants needed additional funding in 2015 for the Plant cannot support a plausible

---

███████████████████████████████████████████████ belying Bancomext's claims that these transfers support tracing into the Corpus Christi Plant.

[12]  Indeed, the only plausible inference that can be drawn is that Bancomext has traced to the Cash Pooling Account. *See KI Liquidation, Inc.*, 2008 WL 5109369, at *7 (where a plaintiff identifies funds in account A, and further identifies transfers from account A to account B, "the critical amount for tracing purposes is the amount remaining in [account A] after the transfer, not the amount of the transfer [between account A and B] itself. This is because the [lowest intermediate balance test] assumes that the trust funds are withdrawn last . . .").

[13]  Bancomext argues that the Defendants' reference to ██████████████ are cherry picked, unreliable and cannot serve as a basis to dismiss the Amended Complaint. Opp., ¶¶ 32-33. Specifically, Bancomext says that *M&G Resins' Schedules and Statements of Assets and Liabilities* [Main Case ECF No. 782] (the "Schedule") contradicts the *First Day Declaration of Dennis Stogsdill* [Main Case ECF No. 3] (the "Declaration") because the Schedule shows that M&G Polimeros owes M&G Resins approximately $28 million, while the Declaration does not. The Declaration calculated intercompanies at the parent level. As such, the $28 million that M&G Polimeros owes M&G Resins (██████████) is included in the amounts owing between M&G USA and the Mexican Entities as a net credit in favor of M&G USA, because M&G Resins is a subsidiary of M&G USA.

[14]  Notably, Bancomext makes no allegation with respect to the M&G Holding Credit Facility, because it cannot. That credit facility was taken out in 2009, years before Bancomext alleges that construction of the Corpus Christi Plant started, in 2013. *See* Am. Compl., ¶ 36.

conclusion that the sole purpose of the M&G Polimeros Credit Facility was to use the proceeds

to fund budget shortfalls and that they were, in fact, used for that purpose.

In short, the allegations Bancomext highlights in its Opposition do nothing to support a

reasonable inference that its loan proceeds were in fact used to fund construction of the Corpus

Christi Plant. That is a bridge (or two) too far based on the allegations of the Amended

Complaint.

> **(ii)**     **Having Failed to Allege a Fraud Claim with the Requisite Level of Specificity, Bancomext Cannot Satisfy the Unjust Enrichment and Fraud Elements of a Constructive Trust Claim as a Matter of Law**

Bancomext argues that the Defendants are precluded from asserting the express contract

defense with respect to the unjust enrichment element of a constructive trust claim because

Bancomext was fraudulently induced into entering into the Revolving Credit Agreements. *See*

Opp. ¶ 108. For the reasons set forth in the Motion (*see* § B) and herein (*see* § B), Bancomext

has failed to allege claims of fraud or fraudulent misrepresentation with the level of specificity

required by Rule 9(b). The express contract defense therefore bars Bancomext's claim of unjust

enrichment.[15] *In re First Central Financial Corp.*, 377 F.3d 209, 213 (2d Cir. 2004) (concluding

"that this principle—that the existence of a written agreement precludes a finding of unjust

enrichment—also applies to constructive trust claims . . ."). The constructive trust claim must be

dismissed.

---

[15]     Bancomext's reliance on *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex. 1974) to the contrary is misplaced. The court in *Meadows* undertook no analysis of the express contract defense and as such, that case says nothing about when the express contract defense is inapplicable.

### B. Bancomext Fails to Allege Fraud and Fraudulent Misrepresentation with the Requisite Level of Specificity

As the Defendants demonstrated in the Motion, Bancomext fails to allege any false statements by the Defendants—which is fatal to its fraud claims. In the Opposition, Bancomext points to a number of allegations that it claims allege fraud by the Defendants with the particularity required by Rule 9(b). None come close to doing so. First, Bancomext points to allegations regarding statements made by representatives of the Mexican Entities—either in emails, powerpoint presentations or in person—regarding the proposed structure of repayment of the proceeds of the M&G Holding Credit Agreements and alleged statements made by Mr. Ghisolfi affirming this structure.[16] *See* Opp., ¶¶ 6-9, 21 & 24. But none of these statements were alleged to have been made by any Defendant and for the reasons set forth below, none of these statements can be imputed to them.[17]

Second, Bancomext points to allegations that the Mexican Entities (under the Defendants' control) made draws under the M&G Holding Credit Agreement and that those draws constituted compliance representations under such agreement. *See* Opp., ¶22. Again, none of these statements are alleged to have been made by the Defendants, and it was the Mexican Entities as signatories to the M&G Holding Credit Agreement—and not the Defendants—that were representing to their compliance with that agreement with each subsequent draw.

---

[16]      As described in the Motion, Bancomext provides no basis for plausibly concluding that Mr. Ghisolfi was acting as a representative of the Defendants. The Revolving Credit Agreements were executed with the Mexican Entities, not the Defendants. The only plausible inference that can be drawn from these allegations is that Mr. Ghisolfi was at any meeting concerning the M&G Holding Credit Agreement as a representative of the Mexican Entities. Indeed, "courts generally presume that . . . directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary . . ." *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998) (requiring a showing that officers and directors were acting in their capacities as directors and officers of parent, and not a subsidiary, prior to imposing liability on parent) (citations and internal quotations omitted).

[17]      Bancomext also alleges that M&G Holding and its affiliates requested a revolving line of credit from Bancomext in 2009. *See* Opp., ¶ 24. In addition to failing to allege any facts to support its allegation, Bancomext's failure to identify *which* affiliates it is referring to is plainly insufficient for the purposes of Rule 9(b).

Third, Bancomext alleges that the Mexican Entities knew in 2009 that they never intended to honor the M&G Holding Credit Agreement, and that they never did honor the proposed repayment structure outlined by Bancomext in the Amended Complaint (*see* ¶ 24). Again, conduct by the Mexican Entities provides no basis for liability on the part of the Defendants. Further, Bancomext alleges that the first wrongdoing occurred with respect to the M&G Holding Credit Agreement in October 2015, nearly *six years* after its execution.[18] It is thus unreasonable to conclude that any party making any representation to Bancomext in 2009 knew such representation to be false when made, or that the Mexican Entities never followed the repayment structure outlined in the Amended Complaint (which, in any event, does not provide a basis for a fraud claim against the Defendants).

Fourth, Bancomext focuses on its fraud allegations concerning the 2015 M&G Polimeros Credit Agreement, which it says that the Defendants have "mischaracterized." Opp., ¶ 25. Specifically, Bancomext says that their central allegation concerning the M&G Polimeros loan is not the deposit of those loan proceeds into the Cash Pooling Account, but rather that the Defendants controlled that account and transferred Bancomext's loan proceeds to their own accounts for their own use. *Id.* Bancomext alleges that this shows "knowledge and intent in causing M&G Polimeros" to solicit the M&G Polimeros Credit Agreement. *Id.* These allegations cannot support a fraud claim against the Defendants. Bancomext fails to make a single allegation concerning *how* the Defendants caused M&G Polimeros to solicit and enter into

---

[18] The "motives" that Bancomext alleges it has identified in the Opposition leads to an implausible conclusion. Bancomext says that the Defendants defrauded it in order to fund construction of the Corpus Christi Plant and run their U.S. operations. *See* Opp., ¶ 29. However, Bancomext alleges that construction of the Plant started in 2013 (*see* Am. Compl., ¶ 36), but that loan proceeds were not transferred into the Cash Pooling Account ██████████████████████████████████████ (*see* Opp., ¶ 29) until 2015, neither of which own the Corpus Christi Plant. Moreover, Bancomext's allegation that the Defendants used its loan proceeds to fund their U.S. operations is vague and conclusory. Bancomext fails to identify which operations were funded by its loan proceeds or how loan proceeds were used.

the M&G Polimeros Credit Agreement, *when* the Defendants caused such a solicitation and *where* they did it. *See In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1422 (3d Cir. 1997) (requiring plaintiff to allege the "who, what, when, where and how elements necessary to establish an intentional or reckless misstatement or omission under Rule 9(b)."). Nor is the mere depositing and withdrawing of funds in and out of an account a fraud. These allegations fail to meet the particularity and specificity requirements of Rule 9(b).

Relatedly, Bancomext highlights its allegations concerning the claimed "concealment" of the Cash Pooling Account from Bancomext, which Bancomext says constituted part of the Defendants' fraud against Bancomext, and which enabled the Defendants to conceal the diversion of loan proceeds. *See* Opp., ¶ 26. However, Bancomext has failed to allege that the Defendants, let alone the Mexican Entities, were under any obligation to disclose the existence of the Cash Pooling Account to Bancomext, or how, when and where they concealed the Cash Pooling Account from Bancomext.[19] Indeed, all that Bancomext alleges is that M&G Polimeros (and not the Defendants) directed Bancomext to deposit loan proceeds in its personal account to deceive Bancomext without any explanation as to why doing so would be fraudulent. *See id.* Nor does Bancomext offer any explanation as to why use of a cash pooling account—commonly used by large international holding companies—is in itself fraudulent or misleading. These vague allegations cannot satisfy Rule 9(b).

Finally, the Opposition highlights a number of carefully selected transfers of proceeds from the Mexican Entities into the Cash Pooling Account, and subsequent ███████████

---

[19]     Bancomext cites to *Sonneberg v. United States*, 2003 U.S. App. Lexis 6503, (3d Cir. Apr. 4, 2003) and *United States v. Colton*, 231 F.3d 890 (4th Cir. 2000) for the proposition that the concealment of the Cash Pooling Account itself supports a claim for fraud. However, both of these cases are criminal cases which noted that intentionally concealing material information constituted fraud. Bancomext fails utterly to allege facts from which this Court could plausibly conclude that the Defendants intentionally concealed the Cash Pooling Account.

██████. *See* Opp., ¶ 29; *see also* Am., Compl., Exs. E & F.[20] Bancomext alleges that because of

these transfers, the Defendants cannot claim that they had no part in defrauding it. *Id.*

Bancomext is wrong. The Mexican Entities—not the Defendants—drew on the Revolving

Credit Agreements, and the Mexican Entities—not the Defendants—apparently transferred those

proceeds into the Cash Pooling Account. The only inference that can be drawn from

Bancomext's allegations is that the Cash Pooling Account was being used as such accounts are

typically used—as a pool of funds to meet the needs of all members of the account, including the

Defendants.[21] Bancomext has alleged no more and without more its fraud claims cannot survive

the Motion.

Bancomext attempts to sidestep its failure to allege any fraudulent conduct by the

Defendants by arguing that the Defendants' "control" of the Mexican Entities makes the Mexican

Entities' conduct imputable to the Defendants. Under Bancomext's recitation of the rule, the

conduct of *any* subsidiary should be imputed to the parent where the parent controls the

---

[20]    Bancomext now claims for the first time in the Opposition that immediately after██████████, M&G
International caused M&G Holding to "redraw the full amount that had been repaid and to immediately upstream the
funds to M&G International . . . " Opp., ¶ 31. This assertion should not be considered by the Court in connection
with the Motion. In any event, aside from its control theory, Bancomext has failed to identify how the Defendants
caused the Mexican Entities to make any subsequent draws. Nor has Bancomext alleged how the Defendants
"drained the Mexican Entities' bank accounts" or "strip[ped them] of Bancomext's valuable collateral. *Id.*

[21]    Bancomext also asserts in the Opposition that the Mexican Entities did not necessarily receive any
benefit from certain of the Defendants' status as net contributors to the Cash Pooling Account. Opp., ¶ 34.
However, Bancomext ignores that the Mexican Entities, as members of that account, enjoyed the benefit of making
transfers out of that account to meet their funding needs. As such, ███████████████████████████
████████, it necessarily benefited the Mexican Entities. Further, Bancomext's allegation that the Defendants, and not
the Mexican Entities, controlled the Cash Pooling Account is belied by the fact that the Cash Pooling Account is
held in the name of M&G Polimeros. Indeed, Bancomext provides no factual support for its conclusory allegation
that the Defendants controlled the account (and which Defendant for that matter), aside from the statements of
counsel to the Mexican Entities. These conclusory allegations fail to meet the specificity requirements of Rule 9(b).
*See In re Rockefeller Center Properties, Inc. Sec. Lit.*, 311 F.3d 198, 216 (3d Cir. 2002) (finding that "bald
assertions or legal conclusions . . . draped in the guise of factual allegations may not benefit from the presumption of
truthfulness" for the purposes of a motion to dismiss).

subsidiary. But that is true only if the parent company (or an affiliated entity) is an alter ego of the subsidiary or if the corporate veil is pierced.[22] *See Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (noting that "mere ownership of a subsidiary does not justify the imposition of liability on the parent . . . [n]or will liability be imposed on the parent corporation merely because directors of the parent corporation also serve as directors of the subsidiary" absent a reason to pierce the corporate veil).

Bancomext makes no alter ego or veil piercing claim in the Amended Complaint. The Defendants can therefore be liable for fraud *only if* they committed the fraud. Other than its implausible claim that Mr. Ghisolfi, in a 2009 meeting concerning a loan to the Mexican Entities, was speaking not on behalf of the Mexican Entities but on behalf of the Defendants, Bancomext alleges no false statement by any Defendant. It is thus unsupported by the allegations in the Amended Complaint that "the Defendants either made the relevant fraudulent statements through their common fiduciaries or caused such statements to be made for their exclusive benefit." Opp. ¶ 28.

In conclusion, none of Bancomext's allegations satisfy the Rule 9(b) pleading standards or lead to the plausible conclusion that Bancomext was defrauded. Based on these allegations, Bancomext fails to state a fraud claim against the Defendants. The fraud claims must therefore be dismissed.

---

[22]     The key case Bancomext relies on, *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1373 (3d Cir. 1992), says nothing about when a parent may be liable for conduct of a subsidiary. That case, an anti-trust case, held only that a statement by an officer of a subsidiary may be admissible against the parent over a hearsay objection as a vicarious admission.

## C.   Bancomext Has Failed to Allege Facts Sufficient to Maintain an Aiding and Abetting Fraud Claim

In the Opposition, Bancomext principally argues that the Defendants were aiders and abettors of the Mexican Entities' purported fraud against Bancomext through their control of the Mexican Entities. Opp., ¶¶ 38. For the same reasons that the fraud claims fail, so too does the aiding and abetting fraud claim. There is simply no basis to conclude that Bancomext could establish (a) the Defendants "control" of the Mexican Entities (*see* § B, *infra*), (b) that the Defendants knew of the Mexican Entities' apparent scheme to defraud Bancomext or (c) that the Defendants substantially assisted the Mexican Entities in defrauding Bancomext.[23] Those deficiencies are fatal to Bancomext's aiding and abetting fraud claim. Accordingly, the aiding and abetting claim must be dismissed.

## D.   Bancomext's Civil Conspiracy Claim Must Be Dismissed

In the Opposition, Bancomext argues that it has stated a claim for civil conspiracy. *See* Opp., ¶ 48. Specifically, Bancomext argues that its fraud claims supply the "underlying tort" required for a civil conspiracy, *i.e.*, the alleged "scheme" that the Mexican Entities and the Defendants hatched at some point in time between 2009 and 2017 to defraud it out of repayment of the Revolving Credit Agreements, which the Defendants supposedly used to keep their U.S. operations afloat. *See id.* at ¶ 49. Bancomext further argues that the allegations set forth in the

---

[23]     Bancomext cites to *U.S. Bank N.A. v. Verizon Commc'ns, Inc.*, 817 F. Supp. 2d 934 (N.D. Tex. 2011) for the proposition that aiding and abetting claims cannot be dismissed where it is alleged that a parent corporation used its control over a subsidiary to render it insolvent. *Verizon* says nothing about when the statements of a subsidiary can be imputed to the parent, making Bancomext's reliance on it misplaced. *Verizon* held that a parent could not use "the shield of *in pari delicto*" in connection with the parent's spinoff of a subsidiary to immunize itself from aiding and abetting breach of fiduciary duty claims. *Id.* at 945. While *Verizon* also discusses imputing a parent's intent to a subsidiary, it did so in the context of imputing intent in connection with a fraudulent transfer claim. *Id.* at 941. Similarly, *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 412 (S.D. Tex. 2008) is unavailing because its attribution of a subsidiary's conduct to the parent came after a specific finding that an alter ego theory applied.

Amended Complaint "conclusively demonstrate both Defendants' knowledge and agreement to the scheme." *Id.*

Because Bancomext's fraud claims fail, so too does its civil conspiracy claim. Bancomext has failed to make any allegations which plausibly support a conclusion that the Defendants' knew of, and agreed to, the supposed scheme alleged by it, aside from Bancomext's control theory allegations. Its conclusory allegations that the Defendants knowingly participated in a fraud that is itself not plausibly alleged are insufficient to survive a motion to dismiss. *See Greenfield v. Tele-Communications, Inc.*, 1989 Del. Ch. LEXIS 49, **6-7 (Del. Ch. 1989) ("The complaint in this instance cannot be deemed to satisfy even a minimalist view of what is necessary to validly plead a civil conspiracy. Plainly, plaintiff cannot satisfy the pleading requirement by simply alleging that a third party knowingly conspired . . .conclusory allegations of conspiracy have regularly been rejected." (citing *Leonard Petroleum, Ltd. v. Mene Grande Oil Co.*, 415 F. Supp. 158 (D. Del. 1976)).

### E. The Conversion Claim Fails as a Matter of Law

In the Opposition, Bancomext argues that it has adequately alleged a conversion claim in the Amended Complaint. *See* Opp., ¶ 63. Specifically, Bancomext asserts that its conversion claim is not a claim for breach of contract (*see id.* at ¶ 64), that it has pleaded that its collateral was converted (*see id.* at ¶ 68) and that the Defendants refused to return their collateral (*see id.* at ¶ 70).

First, Bancomext's conversion claim is a claim for breach of contract because its rights arose under the Revolving Credit Agreements. Unlike in *Fabry's S.r.L. v. IFT Int'l, Inc.*, 2003 U.S. Dist. LEXIS 8597 (S.D.N.Y. May 21, 2003), the only case cited by Bancomext, neither the

Defendants nor the Mexican Entities had an independent duty to Bancomext outside of the Revolving Credit Agreements.[24] For this reason alone, the conversion claim must fail.[25]

Second, Bancomext failed to allege that it ever demanded the return of its collateral in the Amended Complaint.[26] There simply is no such allegation in the Amended Complaint. To the contrary, Bancomext asserts for the first time in the Opposition that it explicitly instructed M&G Polymers and M&G International to turn over its collateral—an assertion that appears nowhere in the Amended Complaint. *Id.* at ¶¶ 63 & 70. The conversion claim must be dismissed.[27]

---

[24]    The court in *Fabry's* found that the defendant owed the plaintiff an independent duty outside of the parties' contract that arose *after* the plaintiff terminated the contract and wrote the defendant a letter demanding that it maintain certain customer deposits for the plaintiff's benefit. As one court interpreting *Fabry's* put it, "the defendant therefore owed the plaintiff two duties: a contractual duty to abide by the payment delivery schedule set forth in the parties' agreement, and, following the termination of the parties' contract, a common-law duty not to collect and retain monies over which plaintiff had a superior possessory right." *Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, 2017 U.S. Dist. LEXIS 106969, at *53 (S.D.N.Y. July 11, 2017).

[25]    *See, e.g., Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889-90 (Del. Ch. 2009) (under Delaware law, "[w]here . . . the plaintiff's claim arises solely from a breach of contract, the plaintiff generally must sue in contract, and not in tort. . . [m]erely alleging that defendants violated their duty against conversion in property is circular, and the Court is not required to accept such a conclusory allegation as true.").

[26]    *See, e.g., Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 651 (5th Cir. 1991) ("Under Texas law, when a party lawfully acquires possession of personalty, conversion generally occurs upon a demand for return of the property and a refusal").

[27]    Bancomext's fraudulent conveyance claims must be dismissed for the reasons set forth in the Motion.

## CONCLUSION

WHEREFORE, the Defendants respectfully requests that the Court (i) dismiss the Amended Complaint with prejudice and (ii) grant such other and further relief as this Court deems just and proper.

Dated: June 12, 2018

Respectfully submitted,

/s/ Joseph M. Mulvihill
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:    ljones@pszjlaw.com
          joneill@pszjlaw.com
          jmulvihill@pszjlaw.com


JONES DAY
Scott J. Greenberg
James Sottile IV
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306
Email:        sgreenberg@jonesday.com
              jsottile@jonesday.com
              scorririvine@jonesday.com
and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:    (216) 586-7035
Facsimile:    (216) 579-0212
Email:        ceblack@jonesday.com

Co-Counsel for the Defendants