**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| M & G USA CORPORATION, *et al.*, | Case No. 17-12307 (BLS) |
| Debtors. | Jointly Administered |
| BANCO NACIONAL DE COMERCIO EXTERIOR, S.N.C., INSTITUCION DE BANCA DE DESARROLLO, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 18-50302 (BLS) |
| MOSSI & GHISOLFI INTERNATIONAL, S.À R.L.; M & G USA CORPORATION; M&G WATERS USA, LLC; M & G POLYMERS USA, LLC; M&G FINANCE CORPORATION; CHEMTEX INTERNATIONAL, INC.; M&G USA HOLDING, LLC; and M & G RESINS USA, LLC, | Related to ECF Nos. 6, 11, 21 |
| Defendants. | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
<u>REPLY IN SUPPORT OF THE MOTION TO DISMISS</u>**

Dated: June 12, 2018

**MILBANK, TWEED, HADLEY &**
**McCLOY LLP**

Dennis F. Dunne (admitted pro hac vice)
Abhilash M. Raval (admitted pro hac vice)
Alan J. Stone (DE Bar No. 2677)
Lauren C. Doyle (admitted pro hac vice)
Alexander B. Lees (admitted pro hac vice)
28 Liberty Street
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
ddunne@milbank.com
araval@milbank.com
astone@milbank.com
ldoyle@milbank.com
alees@milbank.com

**COLE SCHOTZ P.C.**

J. Kate Stickles (DE Bar No. 2917)
David R. Hurst (DE Bar No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
kstickles@coleschotz.com
dhurst@coleschotz.com

Stuart Komrower
Felice Yudkin
Court Plaza North
Hackensack, New Jersey 07602
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
skomrower@coleschotz.com
fyudkin@coleschotz.com

*Counsel to Official Committee of Unsecured Creditors of M & G USA Corporation, et al.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

I.     THE LAW OF THE CASE PREVENTS BANCOMEXT FROM OBTAINING A
CONSTRUCTIVE TRUST OVER THE SALE PROCEEDS. ......................................... 4

     A.    The Court's ruling at the sale hearing is the law of the case, and Bancomext has
not demonstrated a basis to deviate from it. ........................................................ 4

     B.    The Court has jurisdiction to enforce the law of the case. ...................................... 8

II.    BANCOMEXT'S REQUEST FOR A CONSTRUCTIVE TRUST IS UNTIMELY. ..... 10

     A.    The Original DIP Order bars Bancomext from obtaining a constructive trust. ..... 10

     B.    Laches bars the equitable remedy of constructive trust. ...................................... 11

III.   POSTPETITION IMPOSITION OF A CONSTRUCTIVE TRUST WOULD BE
ANATHEMA TO FUNDAMENTAL BANKRUPTCY PRINCIPLES. ......................... 14

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Telecomms. Network Inc. v. Allen*,
    2013 WL 12086913 (D.N.J. July 19, 2013)......................................................15

*In re Behring Int'l, Inc.*,
    61 B.R. 896 (Bankr. N.D. Tex. 1986)..............................................................15

*In re Borkowski*,
    446 B.R. 220 (Bankr. W.D. Pa. 2011) ...............................................................8

*In re City of Phila. Litig.*,
    158 F.3d 711 (3d Cir. 1998)..............................................................................5

*Matter of Emergency Beacon Corp.*,
    665 F.2d 36 (2d Cir. 1981)..............................................................................11

*Fnbn-Rescon I LLC v. Citrus El Dorado LLC*,
    2015 WL 11416171 (C.D. Cal. Feb. 6, 2015)..................................................12

*In re Genesys Research Inst., Inc.*,
    2016 WL 3583229 (Bankr. D. Mass. June 24, 2016) ...............................14 n.3

*In re Grubb & Ellis Co.*,
    2012 WL 1036071 (Bankr. S.D.N.Y. Mar. 27, 2012) ........................................5

*In re Loewen Grp. Int'l, Inc.*,
    292 B.R. 522 (Bankr. D. Del. 2003) .........................................................17 n.4

*In re Mazzocone*,
    1995 WL 113110 (E.D. Pa. Mar. 16, 1995)......................................................9

*MBank-Waco, N.A. v. L. & J., Inc.*,
    754 S.W.2d 245 (Tex. App. 1988)...........................................................17 n.4

*In re November 2005 Land Inv'rs, LLC*,
    636 F. App'x 723 (9th Cir. 2016) ............................................................14 n.3

*In re Outer Harbor Terminal, LLC*,
    No. 16-10283-LSS (Bankr. D. Del. May 5, 2017).............................................13

*Singh v. AG of the United States*,
    677 F.3d 503 (3d Cir. 2012).................................................................4, 17, 18

*SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
530 F.3d 230 (3d Cir. 2008)..................................................................7, 8 n.2

*Sullivan Cent. Plaza I, Ltd. v. Bancboston Real Estate Capital Corp.
(In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723 (5th Cir. 1991) ............................................9

*Taylor v. Freeland & Kronz*,
503 U.S. 638 (1992)..........................................................................13

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010)...........................................................................7

*Warner v. Sun Ship, LLC*,
2012 WL 1521866 (E.D. Pa. Apr. 30, 2012) ......................................12

*In re Wash. Mut., Inc.*,
461 B.R. 200 (Bankr. D. Del. 2011) ...................................................9

*XL/Datacomp v. Wilson (In re Omegas Grp., Inc.)*,
16 F.3d 1443 (6th Cir. 1994) ................................................. *passim*

## Statutes and Rules

11 U.S.C. § 363 .......................................................................... 5, 14 & n.3

11 U.S.C. § 541 .................................................................................17

11 U.S.C. § 544 ....................................................................... 17 & n.4

U.C.C. § 9-203 ..................................................................................11

Fed. R. Bankr. P. 7001 ..............................................................7, 8 n.2

Intervenor-defendant, the Official Committee of Unsecured Creditors of M&G USA Corporation, *et al*. (the "Committee"), hereby joins in, adopts, and incorporates the defendants' reply in support of the motion to dismiss the Complaint. The Committee further respectfully submits this supplemental reply in support of dismissal of Count Eight of the Complaint.[1]

## PRELIMINARY STATEMENT

Merely reciting what Bancomext is trying to achieve in these chapter 11 cases exposes how inequitable—and illogical—its request for a constructive trust really is: for run-of-the-mill causes of action it has alleged against the Debtors, Bancomext does not seek an unsecured claim (as a tort creditor typically would receive), but rather a declaration that it is the actual owner of the Corpus Christi facility and related property, and thus that the Debtors' most significant assets never became property of the estate. Bancomext makes this extraordinary assertion even though, as of the petition date, it had not even liquidated its claims, let alone obtained a judgment against the Corpus Christi facility or been granted *any* interest in the Debtors' property. Even more offensive to the principles of equity, in trying to appropriate $190 million of the proceeds of the Corpus Christi asset sale, Bancomext seeks to obliterate a carefully crafted settlement among key stakeholders (and for the benefit of all unsecured creditors) that was negotiated in reliance on the fact that Bancomext had not asserted any competing claims of ownership by the court-ordered deadline for doing so in the Original DIP Order. And Bancomext continues to press for this inequitable result, notwithstanding that this Court has already rejected it, concluding that Bancomext's allegations give rise, at most, to an unsecured claim.

Bancomext's request for a constructive trust, therefore, is not only facially deficient as a pleading matter, as the defendants' memoranda of law make clear, but also contradicts this

---

[1]     Capitalized terms that are not defined herein have the same meanings as in the *Opening Brief in Support of Defendants' Motion to Dismiss Amended Complaint* [ECF No. 8].

Court's previous orders, contravenes fundamental bankruptcy principles, and is manifestly unjust. The arguments in Bancomext's response brief do nothing to change this reality.

**First, Bancomext cannot overcome the law of the case**. It does not dispute that the Court has already ruled that Bancomext, even if able to prove its allegations, would be entitled only to an unsecured claim against the estates. Nor does Bancomext disagree that the Sale Order prohibits imposition of a constructive trust on the sale proceeds. While Bancomext claims that the Sale Order was improvidently entered, it does not identify any legal or factual error in the Court's ruling, let alone the kind of "clear error" that is required to deviate from the law of the case. Bancomext also cannot show that adhering to the Court's earlier ruling would be unjust. Bancomext alleges that it was denied due process at the sale hearing, but the record shows otherwise: Bancomext knew the purported basis of its causes of action since before the petition date and had ample notice of the Debtors' sale process, yet it failed to use the tools at its disposal to expedite discovery and litigation, and it deliberately chose to make no evidentiary showing at the sale hearing. *See infra* Part I.

**Second, Bancomext cannot overcome the preclusive effect of the Original DIP Order**. It argues that the order merely stipulates that Inbursa's lien is "first priority," and not that it is "exclusive." This misses the point entirely. In addition to addressing priority, the Original DIP Order also contains binding stipulations that Inbursa's liens are valid and extend to the entirety of the collateral package that the Debtors granted prepetition. The fundamental premise of Bancomext's theory, however, is that the Corpus Christi facility does not truly belong to the Debtors, did not become property of the estates, and instead is merely being held in trust for Bancomext as the true beneficial owner. If this were the case, then it could not also be true that Inbursa held valid liens—of any priority—on the entirety of its collateral package as of the

petition date. Debtors cannot grant liens on property they do not own. The request for a constructive trust therefore necessarily challenges the extent and validity of Inbursa's lien, regardless of its rank, and had to be made by the challenge deadline ordered by the Court. *See infra* Part II.A.

**Third**, **Bancomext cannot overcome the doctrine of laches**. It laments that the Debtors and the Mexican Entities were not forthcoming in discovery. Yet Bancomext provides no explanation for why it failed to make motions to compel or otherwise seek the Court's intervention to ensure an expedited resolution of the constructive trust issue. The record reflects no effort by Bancomext to push diligently—and urgently—for a speedy conclusion of discovery and litigation, especially as the Debtors' long-anticipated sale process was coming to a head and the Debtors were facing the possibility of a total collapse if that process were not successful. Instead, Bancomext allowed the discovery process to drag on, while other parties entered into a complex settlement of key issues that allowed the sale to move forward, and that was negotiated against the backdrop of the stipulations in the Original DIP Order, which Bancomext had not timely challenged. As a matter of basic fairness, Bancomext should not be allowed to lull the parties into believing that there are no competing claims of ownership to the Corpus Christi facility and then completely upset the parties' expectations and undermine their settlement about how to distribute the proceeds of that asset. *See infra* Part II.B.

**Fourth**, **and finally, Bancomext cannot overcome persuasive and established authority holding that constructive trusts are anathema to the bankruptcy process**. Several courts, including Courts of Appeals, have held that a party seeking imposition of a constructive trust in bankruptcy has only an unsecured claim, and the *res* of the purported trust becomes part of the bankruptcy estate. *See, e.g.*, *XL/Datacomp v. Wilson (In re Omegas Grp., Inc.)*, 16 F.3d

1443, 1451 (6th Cir. 1994). The Third Circuit approvingly cited these authorities in *Singh v. AG of the United States*, 677 F.3d 503 (3d Cir. 2012), stating that fraudulently obtained property may typically be "subject to a constructive trust," but in the bankruptcy context becomes part of the debtor's estate, thus ensuring "equal treatment of creditors." *Id*. at 516 n.16 (citing *Omegas*, 16 F.3d at 1452). The Court should follow *Singh* and the well-reasoned decisions on which it relies. *See infra* Part III.

## ARGUMENT

I.  **THE LAW OF THE CASE PREVENTS BANCOMEXT FROM OBTAINING A CONSTRUCTIVE TRUST OVER THE SALE PROCEEDS.**

A.  **The Court's ruling at the sale hearing is the law of the case, and Bancomext has not demonstrated a basis to deviate from it.**

This Court has already ruled that Bancomext is not entitled to have a constructive trust imposed on the GUC Pool or any other proceeds of the Corpus Christi asset sale, and that Bancomext instead is limited, at best, to an unsecured claim. 3/28/18 Hr'g Tr. at 63:24-64:1, 65:3-9. This Court entered an order providing that upon the closing of the Corpus Christi asset sale, the GUC Pool payment is to be made into an escrow account for unsecured creditors, free of encumbrances, and used only for the limited purposes of funding a litigation trust and making distributions on account of unsecured claims and specified administrative expenses. *See* Sale Order ¶ 27; Bid Support Term Sheet at p. 1.

Bancomext does not dispute this. Instead, it argues only that the Court's previous decision was erroneous, and so should not be followed in this adversary proceeding. Courts are understandably leery of attempts to engage in serial litigation of this sort, however, and thus impose a high burden on parties, such as Bancomext, seeking to rehash decided issues: they must show not only that the earlier decision was wrong, "but that it was clearly wrong and that

adherence to that decision would create manifest injustice." *See In re City of Phila. Litig.*, 158 F.3d 711, 720-21 (3d Cir. 1998). Bancomext cannot meet this burden.

There was nothing clearly erroneous about the Court's ruling at the sale hearing that Bancomext was required to identify a protectable interest before it could be granted adequate protection, such as attachment of its purported constructive trust to the proceeds of the sale. 3/28/18 Hr'g Tr. at 64:12-19. That conclusion was rooted in the express terms of the Bankruptcy Code, which provide that in "any hearing" under section 363, an "entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2); *see, e.g.*, *In re Grubb & Ellis Co.*, 2012 WL 1036071, at *7 (Bankr. S.D.N.Y. Mar. 27, 2012) (overruling sale objection where objector "failed to provide any evidence establishing the existence of a constructive trust" as required by section 363(p)(2)).

Nor would it be manifestly unjust for the Court to give effect to the Sale Order in this adversary proceeding. Despite its contentions to the contrary, Bancomext had a robust opportunity to establish its entitlement to a constructive trust at the sale hearing. It is undisputed that Bancomext knew of the factual basis for its allegations at least as early as October 2017, before the bankruptcy cases were commenced; that Bancomext knew of the fast-track nature of the Debtors' proposed sale process, and the need for a sale to be approved by March 2018 if the Debtors were to avoid a value-destructive liquidation; and that Bancomext actively inserted itself into the chapter 11 proceedings by no later than January 2018, months before the sale hearing was to take place. Yet Bancomext—represented by sophisticated and experienced counsel—did not move with any urgency. Bancomext laments that the Debtors and the Mexican Entities were not "forthcoming" in discovery (Response Br. ¶ 83); but other than file a Rule 2004 motion and hold a single teleconference with the Court concerning whether the Mexican Entities required the

Debtors' permission to produce documents, Bancomext did not seek to expedite proceedings with respect to the constructive trust remedy, or make any motions to compel.

Bancomext's appeal to due process rings especially hollow given that Bancomext never informed the Court and other parties, as the sale hearing neared, that it believed the Debtors or the Mexican Entities were prejudicing a purported property interest. Bancomext filed its Rule 2004 motion on January 25, 2018, but made no mention in its papers of a constructive trust or any other theory that would give Bancomext a property right in the Corpus Christi facility. *See generally Motion for Examination of M&G Mexico Holding, S.A. de C.V. and M&G Polimeros Mexico, S.A. de C.V. Pursuant to Bankruptcy Rule 2004* [Case No. 17-12307, ECF No. 770]. And Bancomext's counsel did not breathe a word about a constructive trust at the hearing on the Rule 2004 motion a month later, on February 22, 2018. *See* 2/22/18 Hr'g Tr. at 29:1-47:21. It was not until March 7, 2018, when Bancomext filed its original complaint in this adversary proceeding, that it first announced that it was seeking some remedy other than an unsecured claim.

On March 9, 2018, Bancomext objected to the Debtors' sale on the grounds that it had "equitable interests in" the Corpus Christi assets. *Objection of Bancomext to the Sale of the Debtors' Corpus Christi Assets, Desalination Assets, and Other Assets* [Case No. 17-12307, ECF No. 1115] ¶ 1. Even then, however, Bancomext did not sound the alarm bells that it was being deprived of due process as a result of some failure by the Debtors to provide discovery. Bancomext instead blithely brushed aside that it had not yet had the "benefit of formal discovery," and it asserted that "its allegations are well supported by the record in these Chapter 11 Cases and Bancomext's own records." *Id.* ¶ 4; *see also id.* ¶ 32 ("*Even without the benefit of formal discovery*, available evidence persuasively demonstrates that the Debtors orchestrated a

scheme whereby the Mexican Entities' credit from Bancomext would be exploited and wrongfully diverted to benefit the Debtors." (emphasis added)).  Bancomext was evidently completely unconcerned about the pace of discovery when it objected to the sale.

Then, when the sale hearing took place, Bancomext made the conscious decision not to offer a single exhibit or examine a single witness—it did not even present the evidence that it already had in its possession and that it believed was sufficient to support its allegations. Bancomext had the burden of proof, and yet it made *no effort whatsoever* to meet it.  The Court's ruling that Bancomext had not identified a protectable interest that could attach to the proceeds of the asset sale was not a failure of due process; it was a failure of Bancomext's litigation strategy.

Relying on *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d Cir. 2008), Bancomext claims that it would be unfair to adhere to the law of the case because its remedy of constructive trust could not be denied in the context of the sale hearing, outside of an adversary proceeding.  This is unavailing.  To the extent *SLW Capital* holds that a bankruptcy court is *per se* prohibited from resolving, in a contested matter, any issue described by Bankruptcy Rule 7001, it has been overruled by the Supreme Court, as Bancomext acknowledges.  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271-72 (2010) (finding that failure to employ adversary procedures does not void bankruptcy court's order or constitute *per se* violation of due process rights); Response Br. ¶ 78 n.14.  Following *Espinosa*, courts in this Circuit have held that "the appropriate inquiry . . . is not necessarily whether the procedural rules were precisely followed.  Rather, from a due process perspective, the issue is whether [the allegedly aggrieved party] received notice reasonably calculated to apprise itself of the pendency of the action and was afforded an opportunity to object."  *In re Borkowski*, 446

B.R. 220, 224 (Bankr. W.D. Pa. 2011).  As discussed, Bancomext was afforded notice and due process here, and cannot be heard to complain that the Court's ruling at the sale hearing was unfair.[2]

Thus, in these circumstances, there would be no unfairness if the Court were to give effect to its previous ruling.  To the contrary, if the law of the case is not honored, other parties will suffer an injustice: Bancomext will be given an unwarranted second chance to claim for itself the proceeds of the Corpus Christi asset sale, after having failed to persuade the Court the first time that it was entitled to such an extraordinary remedy.

### B.        The Court has jurisdiction to enforce the law of the case.

Seeking to avoid the law of the case, Bancomext takes the brazen position that this Court lacks jurisdiction to dismiss the constructive trust claim altogether.  Bancomext's contorted logic is that because it appealed the Sale Order, this Court is now powerless to breathe life into that order in this adversary proceeding.  The law works no such counterintuitive effect.

As described more fully in the defendants' reply brief, the "divestiture rule" does not limit this Court's jurisdiction to decide the motion to dismiss on any ground.  This includes the Court's authority to dismiss Count Eight on the basis of the law of the case.  As courts in this Circuit and elsewhere have recognized, the divestiture rule is discretionary and is significantly

---

[2]    In any event, *SLW Capital* is inapposite.  That case involved an attempt by a debtor to deprive a lienholder of its interest through confirmation of a plan.  The Third Circuit, in reaching its conclusion that an adversary proceeding was required, relied extensively on the "special status" of liens in bankruptcy, including their ability to "pass through bankruptcy unaffected."  530 F.3d at 235.  Here, by contrast, Bancomext is not asserting a *lien*, but is instead seeking an equitable *remedy* for its common law claims of fraud and unjust enrichment, which it has not yet even established.  This places Bancomext in a fundamentally different position compared with the lienholder in *SLW Capital*.  Equitable remedies can only be granted by a court after trial, upon a showing by the plaintiff that its underlying claim has merit, that legal remedies are inadequate, and that the equities warrant the requested relief.  They are quite unlike liens, which can be established independent of any court action, and they do not ride through bankruptcy if they are not timely asserted.  In addition, the rules contemplate that equitable remedies *can* be determined outside of adversary proceedings.  *See* Fed. R. Bankr. P. 7001(7) ("proceeding to obtain an injunction or other equitable relief" is an adversary proceeding, "except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief").  The heightened due process concerns at issue in *SLW Capital*, which focused on protection of security interests, are therefore not present here.

relaxed in the bankruptcy context, so as not to "hamper the bankruptcy court's ability to administer its cases in a timely manner." *In re Mazzocone*, 1995 WL 113110, at *4 (E.D. Pa. Mar. 16, 1995) (quoting *Sullivan Cent. Plaza I, Ltd. v. Bancboston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 727 (5th Cir. 1991) (declining to adopt a rule that a bankruptcy court lacks jurisdiction over "any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do anything which has any impact on the order on appeal")).  While a bankruptcy court "lacks jurisdiction to vacate or modify an order which is the subject of a pending appeal," or "reconsider" an issue that is before the appellate court, it "retain[s] jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the subject of pending appeals, as long as that enforcement and implementation does not require redeciding issues that are on appeal." *In re Mazzocone*, 1995 WL 113110, at *4 (citing cases).  "The correct statement of the Divestiture Rule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it." *In re Wash. Mut., Inc.*, 461 B.R. 200, 219 (Bankr. D. Del. 2011), *vacated in part on other grounds*, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012).

By invoking the law of the case, the Committee is not asking the Court to vacate, modify, or alter the Sale Order, or to reconsider or redecide any issues presented at the sale hearing.  To the contrary, it is asking the Court to *enforce* and *give effect to* the Sale Order in this adversary proceeding, by dismissing Count Eight on the grounds that the Sale Order has already disposed of the issues in question.  Bancomext's appeal does not affect the Court's jurisdiction to do so.

## II.    BANCOMEXT'S REQUEST FOR A CONSTRUCTIVE TRUST IS UNTIMELY.

### A.    The Original DIP Order bars Bancomext from obtaining a constructive trust.

The Original DIP Order established a deadline of January 14, 2018—*i.e.*, 75 days after the date on which the interim order approving debtor-in-possession financing was entered—for Bancomext to bring any challenge to the claims and liens of Inbursa and its affiliates and DAK. Original DIP Order [Case No. 17-12307, ECF No. 479] ¶ 23(b).  Bancomext did not meet this challenge deadline; thus, for the reasons discussed in the Committee's opening brief, Bancomext is barred from pursuing its constructive trust remedy and claiming an ownership right to a portion of Inbursa's collateral.  *See* Committee Br. pp. 12-14.

Bancomext responds that the Original DIP Order is no impediment to its request for a constructive trust because that order "did not provide that Inbursa's and the DIP Lender's liens in the subject assets were *exclusive*; it provided only that they were first priority."  Response Br. ¶ 80 (emphasis in original).  This is a non-sequitur.  The importance here of the Original DIP Order is that it stipulated that Inbursa, as of the petition date, had "valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens upon all of the DIP Collateral"—which included the Corpus Christi plant (Original DIP Order ¶¶ 3, B(iii), G)—and that Inbursa's prepetition security interests in the assets were "legal, valid, [and] binding," and not subject to any further claim or challenge by any party in interest.  *Id.* ¶¶ 3, 23(b)-(c).  Bancomext, meanwhile, has taken the position that a constructive trust was imposed on the Corpus Christi facility (or at least a $190 million portion of it) before the petition date. Response Br. ¶ 91.  If Bancomext is right, this would mean that *it* was the true owner of the assets as of the time the trust was imposed prepetition, not the Debtors.  This is demonstrated by

Bancomext's assertion that the *res* of its purported constructive trust did not become property of the estate when the Debtors commenced their chapter 11 cases. *See id.* ¶¶ 91-92.

Thus, if Bancomext is correct, it would necessarily follow that the stipulations in the Original DIP Order *cannot be true*. If the Debtors were not the actual owners of the entire Corpus Christi facility before the petition date, then it could not also be the case that Inbursa held a valid and enforceable lien on the entirety of the facility as of the petition date. The exclusivity or priority of Inbursa's lien is beside the point. What matters is that a lender cannot have a valid and enforceable lien—of any priority—on assets that the borrower does not own. *See Matter of Emergency Beacon Corp.*, 665 F.2d 36, 40 (2d Cir. 1981) ("[I]f the debtor has no rights in the collateral, no security interest in that collateral comes into existence."); *see also* U.C.C. § 9-203(b) ("[A] security interest is enforceable against the debtor and third parties with respect to collateral only if . . . the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party."). Bancomext's request for constructive trust is a direct challenge to the stipulations in the Original DIP Order.

Bancomext attempts to sidestep this logic by claiming that Inbursa "waived" its interest in the GUC Pool, and thus Bancomext's constructive trust can attach. But if Bancomext's constructive trust theory has merit, then the Debtors did not own the entirety of the Corpus Christi plant as of the petition date, which in turn means that Inbursa had no lien to waive in these cases in the first place. Count Eight is a challenge to the stipulations in the DIP Order regardless of any decisions Inbursa made during the chapter 11 cases about the disposition of its collateral.

**B.      Laches bars the equitable remedy of constructive trust.**

Bancomext's request for the equitable remedy of constructive trust is untimely for the additional reason that it is barred by laches. Bancomext asserts that "laches cannot operate at

this stage of the proceedings," but that is not so where, as here, the bases for laches are apparent from the face of the pleadings and from events of which the Court can take judicial notice. *See Warner v. Sun Ship, LLC*, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012); *see also Fnbn-Rescon I LLC v. Citrus El Dorado LLC*, 2015 WL 11416171, at *3, 8 (C.D. Cal. Feb. 6, 2015) (considering pleadings and factual matters subject to judicial notice in considering the equitable defense of laches).

As discussed above (*supra* Part I.A) and in the Committee's opening brief (pp. 17-20), the pleadings and the proceedings before this Court demonstrate that Bancomext was dilatory in pursuing its constructive trust remedy. Other parties in interest, meanwhile, changed their positions in the chapter 11 cases to reach a settlement that was urgently needed to facilitate a sale and avoid a free-fall liquidation. Secured creditors, including Inbursa, agreed to the disposition of their collateral, including in reliance on the binding stipulations in the Original DIP Order. The Committee, for its part, agreed not to continue prosecuting its challenges to DAK's claims and liens or its objections to the asset sale, in exchange for, among other things, the establishment of the GUC Pool.

Bancomext now seeks to upend this heavily negotiated and carefully crafted settlement by claiming a right to receive $190 million of the sale proceeds ahead of all other stakeholders, thus depriving unsecured creditors of the $50 million GUC Pool, which represents the only cash consideration they will receive as a result of the sale. The glaring irony is that had the Committee and other parties not reached a settlement, and had the Debtors failed to arrange a successful asset sale, there would be no cash "proceeds" to speak of. Inbursa's credit bid to acquire the Corpus Christi assets would have been the only viable alternative. *See Notice of (I) Successful Bidder and Backup Bidder and (II) Proposed Assumed and Assigned Executory*

*Contracts and Unexpired Leases in Connection with the Sale of the Debtors' Assets* [Case No. 17-12307, ECF No. 1231]. It is only *because* of the settlement that there is any cash on which Bancomext can now train its sights. This makes it especially inequitable for Bancomext to try to take that cash for itself, after lying in wait while other parties worked toward a consensual outcome and made the settlement possible in the first place.

Bancomext asserts that the settlement parties proceeded "at their own peril" when they agreed to the disposition of sale proceeds without involving Bancomext in the negotiations. This is exactly backwards. It was *Bancomext* that chose to live dangerously—including not only by failing to expedite litigation, but also by failing to meet (or at least obtain relief from) the challenge deadline in the Original DIP Order. By the time negotiations concerning the sale were underway in earnest, Bancomext had become bound by the stipulations in the Original DIP Order, including that secured parties had interests extending to the entirety of the Corpus Christi assets. Bancomext had failed to establish that it had any right whatsoever to receive proceeds of the secured parties' collateral (other than as an unsecured creditor), and therefore that it any right to have a seat at the table to discuss how those proceeds would be distributed. The remaining parties, in the meantime, were entitled to rely on the finality of those stipulations when they negotiated and ultimately executed their settlement concerning the disposition of the proceeds.

"Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992). As Judge Silverstein put it bluntly in a recent decision denying relief from a challenge deadline, parties "are entitled to rely on the finality of orders." Bench Ruling, *In re Outer Harbor Terminal, LLC*, No. 16-10283-LSS (Bankr. D. Del. May 5, 2017), ECF No. 690 (attached hereto as Exhibit A) (denying official committee's extension of financing order's challenge deadline where committee was not

appointed until after the deadline passed).  So too here: the settlement parties were entitled to rely on the fact that Bancomext had not timely asserted a property interest in the Corpus Christi facility—and thus was bound by the Original DIP Order—when they negotiated and structured their agreement.

Bancomext's final argument—that it was not required by section 363 of the Bankruptcy Code to obtain finality with respect to its constructive trust theory by the time of the sale hearing—therefore misses the point.  What matters for purposes of the laches defense is not whether the Bankruptcy Code *requires* disputed interests to be determined with finality at the time of a sale hearing in order for adequate protection to be granted (although courts have held that it does).[3]  Rather, the point is that patent unfairness would result if Bancomext were permitted to sit on its rights, induce stakeholders (including in reliance on the stipulations in the Original DIP Order) to make substantial concessions in a settlement, fail to meet its burden of proving a protectable interest at the sale hearing, and *then* make a second attempt to capture $190 million of proceeds for itself.  It is the inequity of these particular circumstances, more than any provision of the Bankruptcy Code, that warrants dismissal on laches grounds.

## III.    POSTPETITION IMPOSITION OF A CONSTRUCTIVE TRUST WOULD BE ANATHEMA TO FUNDAMENTAL BANKRUPTCY PRINCIPLES.

As the Court recognized at the sale hearing, constructive trusts "are hardly favored in bankruptcy."  3/28/18 Hr'g Tr. at 64:2-6.  This echoes a sentiment that has been repeatedly expressed by courts, including the Sixth Circuit in *XL/Datacomp v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994).  There, the court observed that "[c]onstructive trusts

---

[3]    *See In re November 2005 Land Inv'rs, LLC*, 636 F. App'x 723, 725 (9th Cir. 2016) (party seeking adequate protection, including attachment of interest to sale proceeds, is required to satisfy section 363(p)(2) burden where assets are to be sold in accordance with section 363(f)(4)); *In re Genesys Research Inst., Inc.*, 2016 WL 3583229, at *21 (Bankr. D. Mass. June 24, 2016) ("[A] party asserting an interest in property being sold," including in accordance with section 363(f)(4), "has the burden of showing the validity and extent of its interest.").

are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor." *Id.* at 1452. "The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement." *Id.* at 1452-53. The Sixth Circuit in *Omegas* therefore held that except in situations where a trust is imposed before the petition date, either by statute or court order, the Bankruptcy Code does not permit a claimant "to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee." *Id.* at 1451; *accord, e.g.*, *Advanced Telecomms. Network Inc. v. Allen*, 2013 WL 12086913, at *4 (D.N.J. July 19, 2013) ("Constructive trusts are particularly disfavored in bankruptcy because they disrupt the policy of ensuring a ratable distribution to creditors."); *In re Behring Int'l, Inc.*, 61 B.R. 896, 902 (Bankr. N.D. Tex. 1986) ("Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly.").

Bancomext dismisses this leading circuit-level decision as an out-of-jurisdiction ruling to be simply ignored. It instead implores the Court to rely on two bankruptcy court decisions holding that proceeds of a debtor's wrongdoing should be excluded from the estate—even when the remedy of constructive trust was not granted prepetition—wherever state law deems a constructive trust to have "arisen" prepetition (*i.e.*, at the time of the debtor's wrongdoing, as opposed to the time when a court grants the remedy). In short, Bancomext's theory is that even though it had not liquidated its claims against the Debtors, and therefore had not been awarded

the remedy of constructive trust or otherwise been granted a property interest in the Corpus Christi assets by the petition date, this Court should *retroactively* deem Bancomext the true owner and treat the assets as though they never became property of the estate in the first place.

Bancomext does not grapple with the full extent of *Omegas*, nor the fact that the Sixth Circuit decisively exposed the flaws in Bancomext's argument and its cited authorities. The *Omegas* court observed that "[a] constructive trust is a legal fiction, a common-law remedy in equity that may only exist by the grace of judicial action." 16 F.3d at 1449. With this understanding, the Sixth Circuit aptly characterized the illogical nature of the relief sought by a claimant such as Bancomext: "Judge, due to debtor's fraud (or whatever), our property rights as beneficiaries of the constructive trust arose prepetition. Therefore, we stand not in the position of unsecured creditors, nor even equal to the trustee in the position of judgment creditors, but as the rightful owner of the *res* held in trust. Oh, and by the way, would you mind conferring on us these ownership rights and declaring that they arose prepetition?" *Id.* at 1449-50.

The Sixth Circuit then went on to reject such convoluted reasoning, and the argument (repeated by Bancomext here) that all that matters is *when* state law deems a trust to arise: "What [proponents of this argument] . . . and a number of other courts have failed to consider is that just because something is so under state law does not necessarily make it so under the Bankruptcy Code. . . . While the nature and extent of the debtor's interest are determined by state law, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." *Id.* at 1450 (quotation marks and alterations omitted). Because a constructive trust is merely a *remedy*, the Sixth Circuit held, if it has not yet been granted by court decree, it is not an "equitable interest" in the debtor's property as of the petition date; thus,

the property in question is not excluded from the bankruptcy estate under section 541(d). *Id.* at 1451.

Bancomext also fails to give due weight to the fact that the Third Circuit adopted the Sixth Circuit's reasoning in *Singh v. AG of the United States*, 677 F.3d 503 (3d Cir. 2012). Citing *Omegas*, the Third Circuit observed that while proceeds of fraud might be "subject to a constructive trust," under the "unique rules of bankruptcy, a debtor's estate is deemed to include fraudulently obtained property, so long as the property was not impressed with a constructive trust prior to the commencement of the bankruptcy proceeding." *Singh*, 677 F.3d at 516 n.16. This rule, the court stated, is to "ensure equal treatment of creditors." *Id.*

Bancomext seeks to dismiss the Third Circuit's words as mere dictum, but it cannot escape the compelling logic of *Singh* and the cases it cites: the remedy Bancomext seeks is fundamentally at odds with the most basic principles of bankruptcy and would work an extreme injustice here. It would elevate run-of-the-mill, common law tort claims to an extraordinary superpriority status—one that would trump not only unsecured creditors, but also secured creditors, and even the Debtors themselves, who are cloaked with the rights and privileges of bona fide purchasers and judicial lienholders under section 544(a).[4] Bancomext would thus rely on its requested equitable remedy to deny the estates $190 million in value, and deprive unsecured creditors of the GUC Pool—one of their only sources of recovery in the chapter 11

---

[4] Bancomext argues that the Debtors' strong-arm powers have no bearing here because the Debtors have not initiated a separate adversary proceeding to avoid Bancomext's purported interest. Response Br. ¶ 94. This ignores established law that the strong-arm powers can be exercised defensively in an action by a creditor to establish its claim. *E.g.*, *In re Loewen Grp. Int'l, Inc.*, 292 B.R. 522, 528 (Bankr. D. Del. 2003) (section 544(a) may be asserted defensively in action by creditor for resulting trust, even after section 546(a) time limit for bringing avoidance actions has expired). Bancomext does not dispute that the Debtors' status as bona fide purchasers under section 544(a)(3) is superior to any constructive trust over real property. Response Br. ¶ 95. As to the Debtors' status as judicial lienholder under section 544(a)(1), which would apply to personal property and fixtures as well, Bancomext urges the Court to disregard *MBank-Waco, N.A. v. L. & J., Inc.*, 754 S.W.2d 245, 251 (Tex. App. 1988), in which a Texas appeals court concluded that a constructive trust beneficiary is akin to "an unperfected lien creditor," junior to a perfected secured party. *Id.* at 251. Contrary to Bancomext's portrayal, this was not dictum. It was a holding: an "additional reason" identified by the court for denying an alleged constructive trust beneficiary the right to take ahead of a perfected secured creditor. *Id.*

cases—even though Bancomext had not proved its claims, been granted an equitable remedy, or otherwise obtained a judgment and a judicial lien as of the petition date, the challenge deadline in the Original DIP Order, or the date on which this Court entered the Sale Order and determined the disposition of the proceeds of the Corpus Christi asset sale. The Court should avoid this unfair and absurd result by following *Omegas*, *Singh*, and related authorities, and hold that Bancomext's failure to obtain a judgment imposing a constructive trust over the Corpus Christi assets prepetition means that it has, at most, an unsecured claim against the Debtors.

## CONCLUSION

For the reasons discussed above, in the Committee's opening brief, and in the defendants' opening and reply briefs, the Committee respectfully requests that the Court (i) dismiss the Complaint, and (ii) grant the Committee such other and further relief as the Court deems appropriate.

Dated: June 12, 2018
    Wilmington, DE

**COLE SCHOTZ P.C.**

By: /s/ J. Kate Stickles
J. Kate Stickles (DE Bar No. 2917)
David R. Hurst (DE Bar No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
kstickles@coleschotz.com
dhurst@coleschotz.com

Stuart Komrower
Felice Yudkin
Court Plaza North
P.O. Box 800
Hackensack, New Jersey 07602
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
skomrower@coleschotz.com
fyudkin@coleschotz.com

- and -

**MILBANK, TWEED, HADLEY &
MᶜCLOY LLP**

Dennis F. Dunne (admitted pro hac vice)
Abhilash M. Raval (admitted pro hac vice)
Alan J. Stone (DE Bar No. 2677)
Lauren C. Doyle (admitted pro hac vice)
Alexander B. Lees (admitted pro hac vice)
28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
ddunne@milbank.com
araval@milbank.com
astone@milbank.com
ldoyle@milbank.com
alees@milbank.com

*Counsel to Official Committee of Unsecured
Creditors of M & G USA Corporation, et al.*